OPINION OF THE COURT
Abraham G. Gerges, J.
Defendant moves to vacate the judgment on the ground that defendant’s plea allocution did not establish his intent to murder the victim and that the Court failed to advise him that after completing his incarceration he would be required to serve a period of postrelease supervision. The defendant also moves to vacate the judgment on the ground that he received ineffective assistance of counsel when counsel failed to tell him that intent to kill was an element of attempted murder in the second degree, when counsel failed to advise him that he was subject to postrelease supervision and when counsel failed to negotiate a reduction of the amount of postrelease supervision time he will be required to serve.
In deciding this motion the Court has considered the motion papers,[1] the affirmation in opposition and the court file.
Background
On December 9, 1998, an indictment was filed alleging that the defendant committed the crimes of attempted murder in the second degree, numerous counts of robbery in the first degree and theft related crimes, numerous counts of assault in the first degree and assault related charges, and several possession of a weapon charges. On January 1, 1999, the defendant was arraigned, given a copy of the indictment and pleaded not guilty.
On May 11, 1999, the defendant moved to withdraw his not guilty plea and enter a plea of guilty to attempted murder in the second degree, a class B violent felony. Prior to accepting the plea, the Court conducted an allocution. During the allocution, the defendant said that he was sitting in the front passenger seat of a taxi. At the conclusion of the ride, the defendant produced a gun, pointed the weapon at the taxi driver’s head, and demanded property. The driver started to struggle with the defendant. A passenger in the rear then displayed a gun. The driver stopped grappling with the defendant and *286 began fighting with the rear passenger. During the struggle, the rear passenger’s gun “went off,” and the taxi driver was shot in the head.
At the plea allocution, the Court advised the defendant of his constitutional rights which he waived. The Court promised to sentence the defendant to a determinate term of imprisonment of 7V2 years. The Court did not inform the defendant that after release from incarceration the defendant would be required to serve five years of postrelease supervision. The defendant also waived his right to appeal. The Court then granted the motion to withdraw the previous not guilty plea and accepted the guilty plea to attempted murder in the second degree.
On May 25, 1999, the Court sentenced the defendant as promised.
Procedural Bars to Deficiencies in the Plea
CPL 440.10 (2) (c) requires a court to deny a motion to vacate a judgment if all the necessary facts relating to the legal issue appear “on the record” (People v Cooks, 67 NY2d 100; People v Sadness, 300 NY 69). The “on the record” bar applies whether or not the issue (as opposed to facts) has been preserved for appellate review (People v Cooks, supra, 67 NY2d, at 103, n 1; People ex rel. Gibbs v Vincent, 39 NY2d 918, 919; People v Donovon, 107 AD2d 433; see also, People v McKay, 215 AD2d 221). This bar includes claims of involuntariness of the plea based on the minutes of the plea allocution (People v Angelakos, 70 NY2d 670, 672-673).
The motion to vacate the judgment based on errors in the plea allocution and the Court’s failure to advise the defendant of the requirement that after his incarceration he would be required to serve a term of postrelease supervision is denied.
Because the voluntariness of the plea can be raised on appeal despite the defendant’s waiver of appeal, the Court will express its opinion about the merits of the claim (People v Seaberg, 74 NY2d 1, 11).
Allocution
The Federal and State Constitutions require that any guilty plea be made knowingly, intelligently and voluntarily (Boykin v Alabama, 395 US 238; People v Ford, 86 NY2d 397, 402-403). Where during an allocution a defendant contradicts an element of the crime to which he is pleading guilty, the court has an obligation to inquire of a defendant whether despite the defendant’s denial of an element he or she wishes to continue to plead guilty (People v Lopez, 71 NY2d 662, 665, 666).
*287 In this case, the defendant admitted to pointing a gun at the head of the taxi driver. From this part of the allocution, the Court was permitted to infer that the defendant intended to kill the victim (People v McGowen, 42 NY2d 905, 906; People v. Nestman, 239 AD2d 701, 702; People v Joyner, 213 AD2d 252, 253). The fact that the defendant said that the gun went off during a struggle with the rear passenger does not negate the defendant’s intent.
Where a defendant is being held liable under an acting in concert theory, the mens rea required for conviction of the defendant is that of the defendant and not the actor (People v Russell, 91 NY2d 280, 288; People v Flayhart, 72 NY2d 737, 741; People v Lipton, 54 NY2d 340, 349). Nothing in this defendant’s allocution negates the defendant’s intent to kill. At best the claim that the gun went off casts some doubt on the shooter’s mental state, not on the defendant’s.
Failure of the Court to Advise about Postrelease Supervision
In order for a guilty plea to be constitutional a court must inform the defendant of all direct consequences (Brady v United States, 397 US 742, 745; People v Ford, supra, 86 NY2d, at 402-403). A “direct consequence is one which has a definite, immediate and largely automatic effect on defendant’s punishment” (Ford, at 403).
Penal Law § 60.05 (3) requires that all persons convicted of a class B violent felony be sentenced in accordance with Penal Law § 70.02. Penal Law § 70.02 (2) (a) requires that all defendants convicted of a class B violent felony be sentenced to a determinate term of imprisonment. Penal Law § 70.00 (6) and § 70.45 (1) mandate that any person sentenced to a determinate sentence be placed on postrelease supervision after serving the period of incarceration to which such person was sentenced.
New York’s postrelease supervision is almost identical to what the Federal Government terms “supervised release” or “special parole” or what some States call “mandatory parole.” The United States Courts of Appeals have unanimously ruled that supervised release or special parole is a direct consequence of a guilty plea and that a court must advise a defendant of these direct consequences at the time of a plea (United States v Yazbeck, 524 F2d 641 [1st Cir]; Ferguson v United States, 513 F2d 1011 [2d Cir]; Roberts v United States, 491 F2d 1236 [3d *288 Cir]; Moore v United States, 592 F2d 753 [4th Cir]; United States v Garcia-Garcia, 939 F2d 230 [5th Cir]; United States v Syal, 963 F2d 900 [6th Cir]; United States v Richardson, 483 F2d 516 [8th Cir]; United States v Roberts, 5 F3d 365 [9th Cir]; United States v Watson, 548 F2d 1058 [DC Cir]).[2] The failure to advise a defendant regarding “supervised release” or “special parole” is harmless error if the combined sentence of incarceration imposed and the potential incarceration of a violator under “supervised release” or “special parole” does not exceed the maximum jail term that the defendant was informed of at the time of the plea (United States v Raineri, 42 F3d 36 [1st Cir]; United States v Andrades, 169 F3d 131 [2d Cir]; United States v Good, 25 F3d 218, 220 [4th Cir]; United States v Bachynsky, 934 F2d 1349 [5th Cir]; United States v Saenz, 969 F2d 294 [7th Cir]; United States v Osment, 13 F3d 1240 [8th Cir]; United States v Sanclemente-Bejarano, 861 F2d 206 [9th Cir]; United States v Barry, 895 F2d 702 [10th Cir]; United States v Carey, 884 F2d 547 [11th Cir]).
Federal Courts of Appeals have granted habeas corpus relief to State prisoners who pleaded guilty but were not informed of the State’s mandatory parole (Carter v McCarthy, 806 F2d 1373, 1377; United States ex rel. Baker v Finkbeiner, 551 F2d 180, 184; United States ex rel. Russo v Attorney Gen. of Ill., 780 F2d 712, 719). The States that have “mandatory parole” have all ruled that a court’s failure to advise a defendant of “mandatory parole” is reversible error (In re Moser, 6 Cal 4th 342, 351-352, 862 P2d 723, 729; People v Smith, 285 Ill App 3d 666, 670-671, 676 NE2d 224, 227-228; People v Blackburn, 46 Ill App 3d 213, 215, 360 NE2d 1159, 1160; Craig v People, 986 P2d 951, 963 [Colo]; see also, Barkley v State, 724 A2d 558, 560 [Del]; State v Ross, 129 Wash 2d 279, 280, 286-287, 916 P2d 405, 407, 410).
This Court agrees with all the above-cited cases and holds that postrelease supervision is a direct consequence of a guilty plea and a court must inform a defendant of postrelease supervision. Postrelease supervision is a part of a sentence *289 which is definite,[3] immediate,[4] automatic[5] and relates to punishment.[6]
This Court will in the future inform all defendants of postrelease supervision.
Procedural Bars to Ineffective Assistance of Counsel
In Hill v Lockhart (474 US 52, 59), the United States Supreme Court stated:
“In other words, in order to satisfy the ‘prejudice’ requirement, the defendant must show that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial” (emphasis supplied).
Thus, the defendant “must show” that if not for defense counsel’s alleged failure he “would have insisted on going to trial.”
New York, similarly, requires that a defendant show that he would have insisted on going to trial if not for defense counsel’s alleged error (People v Rodriguez, 188 AD2d 623; People v Ahmetovic, 157 AD2d 489, 489-490). Also, a defendant must show his “innocence” (People v Clark, 254 AD2d 299, 300) and “demonstrate” that had he gone to trial he would have been acquitted or received a lesser sentence (People v Guretzky, 274 AD2d 524, 524-525).
In this case the papers do not indicate that defendant would have insisted on going to trial. Indeed, it appears that defendant had no defense to the class B violent felony of robbery in the first degree. If the defendant had been convicted of robbery in the first degree the Court could have imposed the same or a greater sentence.
In addition, while the defendant has in conclusory fashion stated that he would not have accepted the plea, no reasoning is supplied for this conclusory allegation and there has been no “showing” or “demonstration” that this is in fact accurate. If the defendant would not have pleaded guilty what would he have done? The law requires that the defendant show, not merely state, that he would not have pleaded guilty.
*290 CPL 440.30 (4) (b) permits a court to deny a motion to vacate a judgment without a hearing if the moving papers do not contain sworn allegations as to all essential facts (People v Lake, 213 AD2d 494, 495-496; People v Lawson, 191 AD2d 514, 515; People v Gonzalez, 158 AD2d 615; see also, People v Satterfield, 66 NY2d 796, 799; People v Session, 34 NY2d 254, 256). The affidavit must be from a person having actual or personal knowledge of the facts at issue (People v Pan, 245 AD2d 149, 150; People v Taylor, 211 AD2d 603).
The defendant has not supplied an affidavit of a person with personal knowledge that defense counsel failed to negotiate the terms of postrelease supervision.
The motion is procedurally denied.
The Court notes that defense counsel has submitted an affidavit claiming that it was his usual practice to inform defendants of the elements of the crimes charged and of postrelease supervision.
If there were no procedural bars then the Court would have been required to conduct a hearing.
It is further observed that much of what this Court said earlier in this decision about the allocution and the Court’s obligation to inform the defendant about postrelease supervision is applicable to defense counsel.
The motion is denied on procedural grounds.

. The motion papers contain a copy of the plea allocution.

. This Court has selected cases both before 1982 and after 1982 to show that this has been the law even before the 1982 amendment to Federal Rules of Criminal Procedure rule 11 was made. In 1982 the rule was amended to specifically require a Federal court to advise a defendant who is pleading guilty of these consequences. The court has also selected cases in which the convictions have been reversed.

. The imposition of postrelease supervision is not subject to any contingencies or discretion by anyone. It is “definite.”

. Once the defendant pleaded guilty to a class B violent felony he was immediately subject to a term of postrelease supervision. Thus, the “immediate” criterion is established.

. As established earlier in this decision by the confluence of the various Penal Law sections postrelease supervision is “automatic.”

. Like probation and parole, postrelease supervision is “punishment.”